# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 2 5 2002

Michael N. Milby, Clerk of Court
11:10 am

| | |
|---|---|
| RODOLFO CISNEROS D/B/A §<br>AAA ESTRELLA BLANCA §<br>*Plaintiff,* §<br>§<br>vs. §<br>§<br>PATRICIA MARIA DEL CARMEN §<br>MALDONADO GUTIERREZ as Agent §<br>for "CNA MÉXICO S. DE R.L DE C.V." §<br>and "CNA MÉXICO S. DE R.L DE C.V."§<br>*Defendants.* § | CIVIL ACTION NO. B-01-182 |

## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF PLAINTIFF'S OBJECTION
## TO DEFENDANT'S MOTION TO DISMISS

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES, **Rodolfo Cisneros d/b/a AAA Estrella Blanca**, an Individual, and pursuant to Federal Rule Civil Procedure 44.1 submits this his Memorandum of Law in Support of Plaintiff's Response to Defendant's Motion to Dismiss, and would respectfully show the Court the following:

### I.

### F.R.C.P. 44.1

Plaintiff, **Rodolfo Cisneros d/b/a AAA Estrella Blanca,** is a US Citizen who engages in business in Cameron County, Texas. Pursuant to F.R.C.P. 44.1 [*See* Exhibit A, attached hereto.], this Honorable Court has the power to DENY Defendant's Motion to Dismiss in that the Court has absolute discretion to consider any relevant information to interpret any issue regarding foreign law. See *U.S.A. ex rel. Saroop v. Garcia*, 109 F.3d 165, 167 (3d Cir.1997) and *Republic of Turkey v. OKS Partners*, 146 F.R.D. 24, 27 (D. Mass.1993).

Plaintiff would further submit to the Court that the contract [*See* Exhibit B, attached hereto.] which Defendants have alleged controls this case, including The Choice of Forum Clause therein, as drafted is "NOT A CONTRACT" [emphasis added] under Mexican Law.

1

It follows that because there is not a legal, binding, recognizable contract under the laws of Mexico, the parties are actually without a contract as mandated by the Codigo Civil Mexicano del Distrito Federal (Mexican Civil Code) and the Codigo de Comercio Mexicano (Mexican Commerce Code).

It is clear from reading the "alleged" Service Contract that Defendants, **Patricia Maria del Carmen Maldonado Gutierrez, as Agent for CNA de México Inc., and CNA de Mexico Inc.,** all along intended to leave Rodolfo Cisneros D/B/A Estrella Blanca AAA without a legal remedy in Mexico.

**II.**

## ARGUMENT AND AUTHORITIES
## NO CONTRACT UNDER MEXICAN LAW

Under the Mexican Law, the only parties that can validly enter into a contract are "Personas Fisicas" and "Personas Morales." A "persona fisica" is an individual. A "persona moral" is a legal entity such as a Limited Liability Company, a Corporation or a Partnership [*See* Exhibit C, attached hereto.].

Under the Codigo Civil Mexicano **(Civil Code)**, for a Mexican business, or company, or corporation to have a binding, legal contract, it must be legally incorporated and registered with the Secretaria de Hacienda **([hereinafter Hacienda] the Mexican equivalent to our IRS)**. A foreign corporation must not only be incorporated and registered with Hacienda, but it must also register with the Secretaria de Relaciones Exteriores **(similar to our Secretary of State)**. [*See* Exhibit D, attached hereto.]

A foreign or American business/corporation must also register with Hacienda and the Secretaria de Relaciones Exteriores; but it must also register and obtain the proper permits from the Secretaria de Economia Nacional. Only after it has registered can it then enter into a valid, binding contract. There are other numerous registration requirements with many other governmental entities, i.e., Environmental Agencies, Instituto Nacional de Estadistica and Geografia.

Furthermore, if a foreign national owned shares of a Mexican corporation, said Mexican Corporation must be properly registered with Hacienda and the shareholders must file and record, also with Hacienda, their Federal Tax ID Number assigned to them by the IRS in the United States.

2

In the instant case, Rodolfo Cisneros signed the contract as agent or "representante" or dueno of the empresa (a business owner) for AAA Estrella Blanca at 1405 E. Jefferson, Brownsville, Cameron County, Texas.   Unfortunately, AAA Estrella Blanca is neither legally nor properly incorporated in Mexico or the United States.   Compare AAA Estrella Blanca's status to ***CNA Mexico S. de R. L. de C.V.*** in the declarations page of the contract.   CNA Mexico is a proper, legally formed corporation with limited liabilities and variable cashflow.   It is recognized under the laws of Mexico because it is a viable, legal entity.   This is also supported by Section I.(A)of the services contract, as well as by the law.

Article 22 of the Mexican Civil Code states that an individual has standing to contract under Mexican Law by the mere fact that he or she is born and that such ability is lost upon the death of the individual.   The individual must also possess "capacidad de goce" which is the mental capacity to contract and not be under duress or infirmity.   Thus, the mental capacity is acquired when the individual turns eighteen years of age.

Article 25 of the Mexican Civil Code, on the other hand, discusses what constitutes, under Mexican Law, a legal entity or a "persona moral":

1.    The Nation (Mexican Republic), the States and Municipalities;

2.    Other Public Governmental Entities recognized under the law;

3.    Civil Corporations and Civil Partnerships;

4.    Unions, Professional Associations and others enumerated in Section 16 of Article 123 of the Federal Constitution;

5.    Co-ops; and

6.    Other societies, such as non profits promoting social, political, scientific, artistic or charitable causes.

In the instant case, Rodolfo Cisneros is AAA Estrella Blanca.   AAA Estrella Blanca is nothing more than an assumed name.   AAA Estrella Blanca is nothing more, nothing less.   It is an individual doing business as AAA Estrella Blanca.   They are one in the same.   [*See* Exhibit E,

3

attached hereto.]

AAA Estrella Blanca is not a Texas corporation and it is not a Mexican corporation [*See* Exhibit F, attached hereto.]. Since Rodolfo Cisneros could not have contracted on behalf of AAA Estrella Blanca because AAA Estrella Blanca is not registered in Mexico with Hacienda or the Secretaria de Relaciones Exteriores, then there is no contract [*See* Exhibit G, attached hereto.]. Furthermore, Rodolfo Cisneros needs a power of attorney from the company allowing him to negotiate on its behalf. AAA Estrella Blanca's board of directors must have agreed to give him said power of attorney at a meeting of the board. Unfortunately, since AAA Estrella Blanca is not incorporated, then it does not have a board. Without a board of directors there are no meetings. Without meetings, there is no consensus to give Rodolfo Cisneros a power of attorney. Thus, Estrella Blanca AAA, without more, cannot contract in Mexico.

Now, conceivably, Estrella Blanca AAA could still contract in Mexico if it was incorporated in Texas [*See* Exhibit H, attached hereto.]. Nonetheless, it would also need to register with Hacienda and Relaciones Exteriores. After these requisites have been met, only then, could Rodolfo Cisneros, as its legal representative, sign on behalf of the corporation. Estrella Blanca AAA is not registered with the Texas Secretary of State, nor does it possess a charter number and is nothing more than a name.

### III.

### THE COURT MUST APPLY TEXAS CHOICE- OF-LAW RULES

Under *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 85 L.Ed. 1477, 61 S.Ct. 1020 (1941), this Court must apply the Texas choice-of-law rules. See *Nunez v. Hunter Fan Company* 920 F. Supp. 716 U.S. Dist. (1996). Particularly in light of the fact that the Texas Supreme Court adopted the "most significant relationship" methodology of the Restatement (Second) of Conflicts of Laws (1971) [hereinafter Restatement] for tort cases. Similarly, the Texas Supreme Court, in 1984, also adopted the same analysis for contract disputes. See *Duncan v. Cessna Aircraft Co.*, 665 S.W. 2d 414, 421 (Tex. 1984).

The Texas Supreme Court has acknowledged that in contract claims "the law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue." *Id.* at 421. Thus, the Federal District Court must look to "the qualitative nature of the

4

particular contacts" with the forum. *Id.*

Once the first part of the analysis is completed, then the contacts must be evaluated under the framework of the applicable sections of the Restatement. *Id.* at 420-21. There are other sections of the Restatement that apply, these are Section(s) 188, 196 and 6. See ***DeSantis v. Wackenhut Corp.***, 793 S.W.2d 670, 678-679 (Tex. 1990), cert. denied, 498 U.S. 1048, 112 L.Ed. 2d 775, 111 S. Ct. 755 (1991)); ***Pruitt v. Levi Strauss & Co.*** 932 F.2d 458, 461 (5th Cir. 1991).

Under Section 188, the Restatement offers specific guidelines for contract cases as follows:

1)    the place of contracting;

2)    the place of negotiation of the contract;

3)    the place of performance;

4)    the location of the subject matter of the contract; and

5)    the domicile, residence, nationality, place of incorporation, and place of business of the parties.

In the instant case, Rodolfo Cisneros, a US Citizen and Texas Resident, was contacted by CNA de Mexico in Brownsville. CNA required that the majority of the services to be provided by Rodolfo Cisneros d/b/a AAA Estrella Blanca be conducted in Brownsville.

The "alleged" contract required Rodolfo to:

1)    rent a warehouse in Brownsville;

2)    unload the material in Brownsville;

3)    reload the material in Brownsville;

4)    warehouse the material in Brownsville;

5)    revise the shipments in Brownsville;

6)    classify the shipments in Brownsville;

7)    label the shipments in Brownsville;

8)    invoice the shipments in Brownsville;

9)    do all the requisite computerized "custom broker" paperwork in Brownsville;

10)   make arrangements with Brownsville freight companies to ship the product to Matamoros;

5

11)     supervise Mexican customs and pay fees to Mexican Customs;

12)     cover the fees for Mexican customs out of AAA Estrella Blanca's account in Brownsville;

13)     hire Mexican freightliners to deliver the product to Mexico;

14)     provide logistic support in Brownsville;

15)     provide exportation services out of Brownsville;

16)     provide document support to client from Brownsville; and

17)     provide its know-how, expertise and technical support to CNA in order to service the contract.

Furthermore, as a result of the requirements set out in the contract, and in order to adequately service CNA de Mexico, Rodolfo Cisneros had to borrow money from a Brownsville Bank to do the following:

1)     rent a proper warehouse;

2)     buy a forklift;

3)     buy office equipment;

4)     hire employees;

5)     buy computer equipment;

6)     pay for telephone service;

7)     open an operations account in a Brownsville Bank; and

8)     contract with the local utility company and Southwestern Bell Tel. Co.

Additionally, Rodolfo Cisneros d/b/a AAA Estrella Blanca, had to:

1)     pay two employees in Brownsville;

2)     pay payroll taxes to the IRS;

3)     pay employees' Medicare in the US;

4)     pay the employees FICA in the US; and

5)     pay the employees Social Security in the US.

6

Admittedly, the contract was prepared in Mexico and signed in Mexico City. However, under a ***Nunez*** analysis that is not enough to have Mexican law apply. Instead, the Court must look at Section 6 of the Restatement and consider the following factors to guide the choice-of-law analysis:

1) the needs of interstate and international systems;

2) the relevant policies of the forum;

3) the relevant policies of other interested states and the relative interests of those states in the determination of a particular issue;

4) the protection of justified expectations;

5) the basis policies underlying the particular field of law;

6) certainty, predictability, and uniformity of result; and

7) the ease in the determination of the law to be applied.

Now, conceivably Section 196 of the Restatement could preclude the application of Sections 188 and 6, but only if, the entirety of the contract was to be performed in Mexico. Since that is not the case in this particular instance because numerous contacts took place in Brownsville and the US, then Texas law applies pursuant to Section 6.

Section 6 of the Restatement requires that the choice of law analysis focus not on the number of contacts but on their quality. See ***Gulf Consol Servs. , Inc. V. Corinth Pipeworks, S.A.***, 898 F. 2d 1071 (5th Cir) cert. denied, 498 U.S. 900, 112 L. Ed. 2d 214, 111 S. Ct. 256 (1990). In ***Gulf***, the Court held that "some contacts are more important than others because they implicate state policies underlying the particular substantive issue."

Thus, under a Section 6 analysis the determinative factors are as follows:

1) Rodolfo Cisneros is a US Citizen that resides in Texas;

2) AAA Estrella Blanca is not a Mexican Corporation;

3) Rodolfo Cisneros is an individual d/b/a AAA Estrella Blanca;

4) Cameron County DBA records indicate so;

5) Rodolfo Cisneros is not seeking redress under any federal statute;

6) Rodolfo Cisneros is suing under Texas Substantive Law and Texas Causes of Action;

7

Admittedly, the contract was prepared in Mexico and signed in Mexico City. However, under a *Nunez* analysis that is not enough to have Mexican law apply. Instead, the Court must look at Section 6 of the Restatement and consider the following factors to guide the choice-of-law analysis:

1) the needs of interstate and international systems;

2) the relevant policies of the forum;

3) the relevant policies of other interested states and the relative interests of those states in the determination of a particular issue;

4) the protection of justified expectations;

5) the basis policies underlying the particular field of law;

6) certainty, predictability, and uniformity of result; and

7) the ease in the determination of the law to be applied.

Now, conceivably Section 196 of the Restatement could preclude the application of Sections 188 and 6, but only if, the entirety of the contract was to be performed in Mexico. Since that is not the case in this particular instance because numerous contacts took place in Brownsville and the US, then Texas law applies pursuant to Section 6.

Section 6 of the Restatement requires that the choice of law analysis focus not on the number of contacts but on their quality. See *Gulf Consol Servs. , Inc. V. Corinth Pipeworks, S.A.*, 898 F. 2d 1071 (5th Cir) cert. denied, 498 U.S. 900, 112 L. Ed. 2d 214, 111 S. Ct. 256 (1990). In *Gulf*, the Court held that "some contacts are more important than others because they implicate state policies underlying the particular substantive issue."

Thus, under a Section 6 analysis the determinative factors are as follows:

1) Rodolfo Cisneros is a US Citizen that resides in Texas;

2) AAA Estrella Blanca is not a Mexican Corporation;

3) Rodolfo Cisneros is an individual d/b/a AAA Estrella Blanca;

4) Cameron County DBA records indicate so;

5) Rodolfo Cisneros is not seeking redress under any federal statute;

6) Rodolfo Cisneros is suing under Texas Substantive Law and Texas Causes of Action;

7

7) Applying Texas law to a Texas resident and US Citizen's claim against a foreign corporation does not infringe upon Mexico's sovereignty;

8) Application of Texas law is a must because there is no contract under valid, recognizable principles of Mexican Law;

9) Texas has more of a significant relationship with the issues presented than does Mexico;

10) Texas has a compelling interest in the application of basic contract law and DTPA law to its own residents;

11) Texas has a strong interest in the protection of its citizens;

12) Rodolfo Cisneros had a reasonable justified expectation in that Texas law would apply;

13) The "alleged" choice of forum clause in the contract does not preclude Rodolfo Cisneros from asserting a claim in a forum outside Mexico;

14) Said clause only speaks to the interpretation and compliance of the contract and does not cover litigation or the parties' waiving their right to sue;

15) Rodolfo Cisneros entered into the contract as a representative of AAA Estrella Blanca which is an American business with a Texas' address; and

16) Certainly American Courts have a strong interest in protecting its citizens, particularly in light of the fact that neither Rodolfo Cisneros, nor AAA Estrella Blanca could rightfully sue in Mexico City, nor would they have a remedy under Mexican Law.

## IV.

## THE FORUM SELECTION CLAUSE IS NOT ENFORCEABLE

Not only does the contract fail under Mexican law leaving the parties without a contract, but the forum selection clause would be unenforceable as a matter of public policy in the United States. The United States Supreme Court in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S. Ct. 1907, 32 L.Ed 2d 513 (1972) stated that "forum selection clauses have historically not been favored by American Courts." May courts, federal and state, decline to enforce such clauses on the ground

8

that they are contrary to public policy and effectively oust the jurisdiction of the American Courts.

Upon a showing by the resisting party that the choice would be unreasonable, unfair or unjust, then, pursuant to ***Bremen***, the forum selection clause must be set aside.

In the instant case, if the Court would uphold the clause, Rodolfo Cisneros d/b/a AAA Estrella Blanca would be dismissed in Mexico City for failing to comply with the pretrial requirements, i.e., not having standing to sue [*See* Exhibit I, attached hereto.]. Thus, Rodolfo Cisneros d/b/a AAA Estrella Blanca would be left without a viable remedy under Mexican Law. Moreover, the forum selection clause in the instant case does not select a neutral location to litigate disputes or a special location with any expertise in international contractual disputes, but inures to the benefit of Defendants by mandating litigation in Mexico City courts.

Overall, the contract was not preformed in Mexico, nor did Rodolfo Cisneros perform the bulk of the logistics, importation and exportation in Mexico. ON the contrary, the majority of the work was performed in the United States, particularly in Brownsville. Finally, the forum selection clause is unreasonable in that; 1) the incorporation of the forum selection clause into the agreement was the product of fraud and overreaching, 2) the party avoiding enforcement will "for all practical purposes" be deprived of his day in court because of the unfairness of the selected forum, 3) the fundamental fairness of the chosen law will deprive the plaintiff of a remedy, and 4) enforcement of the forum selection clause could contravene a strong public policy of the forum state. ***Haynsworth v. The Corporation, et al.*** 121 F.3d 956, 963 (5th Cir, 1997).

Finally, the parties did not have equal bargaining power and freedom to contract. This is evident by the language in the "presumed" contract. The suit involves Rodolfo Cisneros, an individual, versus a powerful Mexican corporation with global presence.

CNA knew that all that Rodolfo Cisneros could provide was his expertise and knowledge in logistics, importation and exportation. CNA knew that he did not possess a warehouse, nor the facilities to comply with the contract. CNA knew that he would have to set up the facilities and expend a considerable amount of money doing so. Nevertheless, Rodolfo Cisneros, in good faith, entered into the agreement because he expected CNA do keep its word and start allowing him to handle all services enumerated in the contract. And Rodolfo Cisneros did indeed keep his word. He did everything that was required of him. When CNA started receiving the invoices demanding

9

5% per cent payment on the amounts being shipped, it balked and thought it was too much.  That is when it found a cheaper competitor who could handle its shipments and left Rodolfo Cisneros d/b/a AAA Estrella Blanca, plaintiffs, holding the bag.

The parties agreed that in exchange for the above services, CNA de Mexico would pay 5% on the value of the shipments if the shipments were worth more than $ 4,100.00 U.S. dollars.  If the shipments are not worth more than $ 4,100.00, then CNA de Mexico will pay $ 150.00 U.S. dollars per shipment.

Rodolfo's expectations to get paid were reasonable because; 1) there was a promise from CNA to pay, 2) the communication was certain, i.e., 5% for shipments under $ 4,100.00 U.S. dollars or if less than $ 4,100.00, then $ 150.00 U.S. dollars per shipment and 3) it was communicated to Rodolfo, as evidenced by the parties' signatures in the services contract.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Rodolfo Cisneros d/b/a AAA Estrella Blanca, respectfully requests that the Court make findings that Texas Choice-of-Law applies and in all things DENY Defendants Motion to Dismiss under Rule 12(b)(3).

Respecfully Submitted,

BY: _____
Carlos H. Cisneros
Attorney-in-Charge
State Bar No. 00793508
Federal I.D. No. 21865
845 E. Harrison St., Ste. "A"
Brownsville, Texas 78520
Tel. (956) 504-2260
Fax (956) 504-5988

*CISNEROS & MATTINGLY, P.C.,*
*ATTORNEYS FOR PLAINTIFF,*
*RODOLFO CISNEROS*
*D/B/A AAA ESTRELLA BLANCA*

10

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was on this the 25th day of March, 2002, served via *Hand Delivery*, to the following parties or attorneys pursuant to Federal Rule of Civil Procedure 5(b):

> Hon. Robert A. Whittington
> Hon. Francisco J. Zabarte
> **SANCHEZ, WHITTINGTON, JANIS & ZABARTE, L.L.P.**
> 100 North Expressway 83
> Brownsville, Texas 78521-2284.

BY: _____
       **Carlos H. Cisneros**

*Exhibit A*



attested copy without final certification or (ii) permit the foreign official record to be evidenced by an attested summary with or without a final certification. The final certification is unnecessary if the record and the attestation are certified as provided in a treaty or convention to which the United States and the foreign country in which the official record is located are parties.

**(b) Lack of Record.** A written statement that after diligent search no record or entry of a specified tenor is found to exist in the records designated by the statement, authenticated as provided in subdivision (a)(1) of this rule in the case of a domestic record, or complying with the requirements of subdivision (a)(2) of this rule for a summary in the case of a foreign record, is admissible as evidence that the records contain no such record or entry.

**(c) Other Proof.** This rule does not prevent the proof of official records or of entry or lack of entry therein by any other method authorized by law.

Cross references to FRCP 44: *Commentaries*, "Domestic & foreign official records," ch. 8-C, §7.1, p. 429; 1991 Notes to FRCP 44, p. 1020; *O'Connor's Federal Forms * Civil Trials*, FORMS 8C. Authenticated and certified copy of government record by archivist admissible in evidence, see 44 U.S.C. §2116.

Source of FRCP 44: As amended Feb. 28, 1966, eff. July 1, 1966; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Dec. 1, 1991.

*Espinoza v. INS*, 45 F.3d 308, 309-10 (9th Cir.1995). "Authentication serves to establish a chain of custody for government records. The 9th Circuit requires only that immigration forms be authenticated through some recognized procedure, such as those required by INS regulations or by the [FRCPs]."

*AMFAC Distrib. Corp. v. Harrelson*, 842 F.2d 304, 306-07 (11th Cir.1988). "Under [FRCP] 44(a)(1), two things are required to authenticate a copy of a state court judgment. First, the copy must be attested to by the officer having the legal custody of the judgment or by his deputy. Second, there must be a certificate that the attesting officer has legal custody; this certificate is to be made by a judge of a court of record of the district or political subdivision in which the judgment is kept and must be authenticated by the seal of the court. [¶] [If] AMFAC did not substantially comply with Rule 44(a) ... the Texas judgment is admissible under [FRE] 902 [which] provides for authentication by certificate when a copy of the judgment bears a seal purporting to be that of a state court and a signature purporting to be an attestation of the custodian of the original judgment."

## FRCP 44.1. DETERMINATION OF FOREIGN LAW

A party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law.

Cross references to FRCP 44.1: See FRE 201; *Commentaries*, "Motion for Judicial Notice," ch. 5-M, p. 244; 1966 Notes to FRCP 44.1, p. 1020; *O'Connor's Federal Forms * Civil Trials*, FORMS 5M.

Source of FRCP 44.1: As added Feb. 28, 1966, eff. July 1, 1966; amended Nov. 20, 1972, eff. July 1, 1975; Mar. 2, 1987, eff. Aug. 1, 1987.

*U.S.A. ex rel. Saroop v. Garcia*, 109 F.3d 165, 167 (3d Cir.1997). "Interpretations of foreign law are subject to plenary review and may be resolved by reference to any relevant information."

*Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995). "[T]he meaning of foreign law is no longer treated as a strict question of fact to be proved in the same manner as other questions of fact, which is ... by sworn testimony and documents admissible under the [FREs]."

*Grand Entertainment Group v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir.1993). "[B]oth the text of the rule and the advisory committee notes make it clear that we are not limited to the material presented to the district court in analyzing issues of foreign law but may do our own supplemental research." *See Pfizer*, below.

*Pfizer, Inc., v. Elan Pharm. Research Corp.*, 812 F.Supp. 1352, 1360-61 (D. Del.1993). "Under [FRCP] 44.1, a court is not required to engage in its own research and has the right to insist that the proponent of the foreign law present evidence on the question."

*Republic of Turkey v. OKS Partners*, 146 F.R.D. 24, 27 (D. Mass.1993). "'Statutes, administrative material, and judicial decisions can be established most easily by introducing an official or authenticated copy of the applicable provisions or court reports supported by expert testimony as to their meaning ... In addition ... a litigant may present any other information concerning foreign law he believes will further his cause, including secondary sources such as texts, learned journals, and a wide variety of unauthenticated documents relating to foreign law.'"

*Exhibit B*

# CONTRATO DE PRESTACION DE SERVICIOS

CONTRATO DE PRESTACION DE SERVICIOS QUE CELEBRAN, POR UNA PARTE, " *CNA MEXICO S. DE R. L. DE C.V.*" CON DOMICILIO EN, EJE SUR # 36, PASEO DE CHURUBUSCO, DELEGACION IZTAPALAPA CODIGO POSTAL 09030, MEXICO D.F., A LA QUE EN LO SUCESIVO SE LE DENOMINARA " LA EMPRESA" DEBIDAMENTE REPRESENTADA POR LA *ING. PATRICIA MARIA DEL CARMEN MALDONADO GUTIERREZ*, EN SU CARACTER DE REPRESENTANTE LEGAL ; Y POR LA OTRA, LA EMPRESA " *AAA ESTRELLA BLANCA*" CON DOMICILIO 1405 E JEFFERSO. BROWNSVILLE, TX 78520 U.S.A. CON NUMERO FEDERAL 74-2990640 DEBIDAMENTE REPRESENTADA POR EL *SR. RODOLFO CISNEROS* , EN SU CARACTER COMO DUEÑO DE LA EMPRESA, A QUIEN EN LO SUCESIVO SE LE DENOMINARA COMO " PRESTADOR DE SERVICIOS ", CONFORME AL TENOR DE LAS SIGUIENTES DECLARACIONES Y CLAUSULAS.

## DECLARACIONES

### I. DECLARA CABLE NETWORK

A.    QUE ES UNA SOCIEDAD ANONIMA DE CAPITAL VARIABLE    LEGALMENTE CONSTITUIDA, DE CONFORMIDAD CON LAS LEYES MEXICANAS COMO LO DEMUESTRA CON LA ESCRITURA DE SU ACTA CONSTITUTIVA NUMERO__3032__REGISTRO__PUBLICO VOLUMEN__229672 OTORGADA ANTE LA FE DEL NOTARIO PUBLICO NUMERO__38 DE MEXICO DISTRITO FEDERAL, EL SR. LIC. CARLOS A. MATSUI SANTANA.

B.    QUE PARA LA CONSECUCION DE SUS FINES, ADEMAS DE SUS PROGRAMAS Y PRESUPUESTOS APROBADOS, REALIZA OTRA SERIE DE ACTIVIDADES CONCRETAS, MEDIANTE LA CELEBRACION DE ACUERDOS , CONVENIOS O CONTRATOS CON LOS SECTORES PUBLICO, SOCIAL Y PRIVADO.

C.    QUE CON FECHA 29 DE MAYO 2001 "LA EMPRESA" CELEBRO CON AAA ESTRELLA BLANCA UN ( contrato, convenio o acuerdo) PARA LOS SERVICIOS EN LOS RAMOS DE LOGISTICA , IMPORTACION Y EXPORTACION DE MATERIAL

D.    QUE REQUIEREN PARA LA REALIZACION DEL ( contrato, convenio o acuerdo) SEÑALADO EN LA DECLARACION ANTERIOR, LA PRESTACION DE SERVICIOS PARA LLEVAR ACABO LAS ACCIONES EN MATERIA DE ESTE CONTRATO, CONSISTENTES EN:

1.-    BODEGAS CON SERVICIO MANIOBRAS ( CARGA Y DESCARGA) Y ALMACENADO EN LA CIUDAD DE BROWNSVILLE TX.

2.-    CERTIFICACION DE PAIS DE ORIGEN, T.L.C. REVICION Y ETIQUETADO DE MERCANCIA

3.-    CLASIFICACION DE MERCANCIA Y GASTOS DE ADUANA MEXICANA.

4.-    SUPERVISION Y DE TRAMITES DE ADUANA EN LA CIUDAD DE MATAMOROS, TAMAULIPAS, ANTE LA AGENCIA ADUANAL. ( LOS IMPUESTOS Y/O OBLIGACIONES FISCALES ASI COMO TAMBIEN LOS GASTOS DE SERVICIO DEBERAN SER CUBIERTAS POR "LA EMPRESA" ANTES DE REALIZAR EL CRUZE DEL MATERIAL A MATAMOROS, TAMPS.)

5.-    LA CONTRATACION DE LINEAS DE TRANSPORTE EN LA CIUDAD DE MATAMORS, TAMAULIPAS. QUE SE UTILIZARAN PARA LOS EMBARQUES DE MERCANCIA.

( LOS GASTOS QUE RESULTEN DE LA CONTRATACION DEL TRANSPORTE DEBERAN SER SOLVENTADOS POR "LA EMPRESA").

E.   QUE SEÑALA COMO DOMICILIO PARA EFECTOS DE ESTE CONTRATO, EL YA ANTES MENCIONADO.

## II. DECLARA " PRESTADOR DE SERVICIOS".

A.   QUE CUENTA CON LOS CONOCIMIENTOS TECNICOS Y LA EXPERIENCIA NECESARIA PARA REALIZAR LAS LABORES CONTENIDAS EN ESTE CONTRATO.

EXPUESTO LO ANTERIOR, LAS PARTES SUJETAN SUS COMPROMISOS A LOS TERMINOS Y CONDICIONES INSERTOS EN LAS SIGUIENTES:

## CLAUSULAS

PRIMERA. " EL PRESTADOR DE SERVICIOS " SE OBLIGA A OFRECER A LA EMPRESA", SUS SERVICIOS CON EL OBJETO DE REALIZAR LAS ACTIVIDADES CONSISTENTES EN : SERVICIOS DE LOGISTICA, IMPORTACION Y EXPORTACION; TAL Y COMO SE ESTABLECE EN LAS FRACCIONES "C" Y "D" EN DECLARACIONES DE CNA MEXICO S DE R.L. DE C.V.

SEGUNDA " EL PRESTADOR DE SERVICIOS " SE OBLIGA A DESARROLLAR EL SERVICIO QUE SE ESTABLECE EN LA CLAUSULA QUE ANTECEDE, A ENTERA SATISFACCION DE " LA EMPRESA" APORTANDO TODA SU EXPERIENCIA Y CAPACIDAD, DEDICANDOLE TODO EL TIEMPO QUE SEA NECESARIO.

TERCERA. LAS PARTES ESTAN CONFORMES EN QUE LA PRESENTE CONTRATACION TIENE COMO FUNDAMENTO, LOS LIÑIAMENTOS CONTENIDOS (ACUERDOS, CONTRATOS O CONVENIOS), SE PODRAN CONVENIR MEDIANTE CONTRATOS CIVILES.

CUARTA. " EL PRESTADOR DE SERVICIOS " SE OBLIGA A INFORMAR A "LA EMPRESA" DEL ESTADO QUE GUARDE SU LABOR, CUANTAS VECES SEA REQUERIDO PARA ELLO, ASI COMO A RENDIR UN INFORME GENERAL AL TÉRMINO DEL CONTRATO Y NO CEDER LOS DERECHOS Y OBLIGACIONES DERIVADOS DE ESTE CONTRATO, SIN CONSETIMIENTO EXPRESO DE "LA EMPRESA".

QUINTA. EL PRESENTE CONTRATO ESTARA VIGENTE DEL DIA 29 DEL MES DE MAYO DEL AÑO 2001, Y TENDRA VALIDEZ POR EL LAPSO DE DOS AÑOS A PARTIR DE SU FIRMA.

SEXTA. " EL PRESTADOR DE SERVICIOS " RECIBIRA POR CONCEPTO DE HONORARIOS, LA SUMA DE:

1.   5% (CINCO POR CIENTO) SOBRE EL VALOR DEL PRODUCTO, SIEMPRE Y CUANDO EL VALOR DE ESTE NO SEA MENOR DE $4,100.00 DLS U.S.A. (CUATRO MIL CIEN DOLARES DE ESTADOS UNIDOS.)

2.   $150 DLS. U.S.A. ( CIENTO CINCUENTA DOLARES DE ESTADOS UNIDOS) CUANDO

EL VALOR DE EL PRODUTO SEA MENOR DE $4,100.00(CUATRO MIL CIEN DOLARES
DE ESTADOS UNIDOS.)

SÉPTIMA. "EL PRESTADOR DE SERVICIOS" CONVIENE EN QUE LAS REMUNERACIONES QUE
PERCIBA POR LA REALIZACION DE LOS SERVICIOS MATERIA DE ESTE CONTRATO, SERAN LAS
UNICAS.

OCTAVA. "LA EMPRESA" SE OBLIGA A PAGAR LOS HONORARIOS DE "EL PROFESIONISTA"
A TRAVÉZ DE LA UNIDAD ADMINISTRATIVA CORREPONDIENTE, PREVIA ENTREGA DE LOS
RECIBOS O COMPROBANTES RESPECTIVOS, LOS CUALES DEBERAN REUNIR LOS REQUISITOS
FISCALES QUE MARCA LA LEGISLACION VIGENTE EN LA MATERIA.

NOVENA. "EL PRESTADOR DE SERVICIOS" ACEPTA Y CONVIENE QUE EN EL CASO DE
OMITIR EL AVISO Y DECLARACION PARA EFECTOS FISCALES, A QUE SE REFIERE LA CLAUSALA
ANTERIOR, FACULTA A "LA EMPRESA" PARA QUE LE RETENGA LOS PAGOS A SU FAVOR, HASTA
EN TANTO SE CUMPLAN TALES OMISIONES FISCALES A SU CARGO COMO CAUSANTE, EN LOS
TÉRMINOS DE LAS LEYES APLICABLES.

DECIMA. CONCLUIDA LA VIGENCIA DEL PRESENTE CONTRATO NO PODRA HABER
PRORROGA AUTOMATICA POR EL SIMPLE TRANSCURSO DEL TIEMPO Y TERMINARA SIN
NECESIDAD DE DARSE AVISO A LAS PARTES DESPUES DE DOS AÑOS.

DECIMA PRIMERA. PARA EL CASO DE QUE "LA EMPRESA", TUVIERA NECESIDAD DE
CONTRAR NUEVAMENTE CON LOS SERVICIOS DE "EL PRESTADOR DE SERVICIOS" , SE REQUERIA
LA CELEBRACION DE UN NUEVO CONTRATO.

DECIMA SEGUNDA. QUEDA EXPRSAMENTE CONVENIDO QUE CUANDO "EL PRESTADOR
DE SERVICIOS" SE APOYE EN PERSONAL AUXILIAR EN EL EJERCICIO DE SUS ACTIVIDADES,
ATENDIENDO EL TRABAJO QUE SE LE ENCOMIENDA, DICHO PERSONAL DEPENDERA
EXCLUSIVAMENTE DE ÉL, SIN QUE SE ESTABLEZCA NINGUN VINCULO ENTRE LA "EMPRESA" Y
EL MISMO QUEDANDO A CARGO DE "EL PRESTADOR DE SERVICIOS" ,TODAS LAS
RESPOSABILIDADES PROVENIENTES DE LA UTILIZACION DE LOS SERVICIOS DEL PERSONAL QUE
LO APOYE, Y QUE NO SEA PUESTO A SU DISPOSICION POR "LA EMPRESA".

DECIMA TERCERA. EL PRESENTE CONTRATO PODRA DARSE POR TERMINADO A
VOLUNTA DE CULQUIERA DE LOS CONTRATANTES EN UN TERMINO DE HABER CUMPLIDO DOS
AÑOS DE SERVICIO, PREVIO AVISO QUE DE AL OTRO CON TRES MESES DE ANTICIPACION, CON
EL PROPOSITO DE QUE DURANTE ESE LAPSO HAYA POSIBILIDAD DE CONCLUIR LOS TRABAJOS
PENDIENTES Y DE QUE, EN TODO CASO, "LA EMPRESA", TENGA OPORTUNIDAD DE DESIGNAR A
QUIEN SUSTITUYA A "EL PRESTADOR DE SERVICIOS" .

DECIMA CUARTA. QUEDA EXPRESAMENTE CONVENIDO QUE EL INCUMPLIMENTO A
CUALQUIERA DE LAS OBLIGACIONES QUE AQUI SE CONTRAEN, Y AQUELLAS OTRAS QUE
DIMANAN DEL CODIGO CIVIL VIGENTE , COMO CONSUBSTANCIALES A LAS OBLIGACIONES DE
LAS PARTES, SERA MOTIVO DE RESCISION DEL PRESENTE CONTRATO, Y GENERA EL PAGO DE
LOS DAÑOS Y PERJUICIOS QUE EL INCUMPLIMIENTO CAUSA LA CONTRAPARTE CUMPLIDA.

DECIMA QUINTA. "EL PRESTADOR DE SERVICIOS" , CEDE GRATUITAMENTE A LA
"EMPRESA" LOS DERECHOS (DE PROPIEDAD, DE AUTOR, TRADUCTOR, COMPILADOR,
EJECUTANTE, O INTERPRETE), QUE PUDIERAN ORGINARSE CON MOTIVO DE LA PRESTACION DE
SUS SERVICIOS PROFESIONALES ASI MISMO, "EL PRESTADOR DE SERVICIOS" CONVIENE EN
CEDER A TITULO GRATUITO TODOS (LOS DERECHOS DE PATENTAS Y MARCAS O DE
EXPLOTACION DE INVENTOS, DIBUJOS Y MODELOS DE CARATER INDUSTRIAL), QUE PUDIERAN
RESULTAR EN VIRTUD DE LA PRESTACION DE LOS SERVICIOS MENCIONADOS A FIN DE QUE LA "

EMPRESA", SI LO CREE CONVENIENTE, SE RESERVE SE DERECHO DE LICENCIAMIENTO O DE HACERLA DEBIDA DIFUCION CULTURAL O CIENTIFICA DEL TRABAJO REALIZADO.

DECIMA SEXTA. PARA LA INTERPRETACION Y COMPLIMIENTO DEL PRESENTE CONTRATO, LAS PARTES SE SOMETEN A LA JURISDICCION Y COMPETENCIA DE LOS TRIBUNALES DE LA CIUDAD DE MEXICO, DEL DISTRITO FEDERAL, ASI COMO A LAS DISPOSICIONES CONTENIDAS EN EL CODIGO CIVIL VIGENTE PARA EL ESTADO DE MEXICO D.F., RENUNCIANDO EXPRESAMENTE AL FUERO QUE PUDIERA CORRESPONDERLES EN RAZON DE SU DOMICILIO ACTUAL O FUTURO.

LEIDO EL PRESENTE CONTRATO Y ENTERADAS LAS PARTES DE SU CONTENIDO Y ALCANCES, LO FIRMAN EN LA CIUDAD DE MEXICO D.F., A LOS 29 DIAS DEL MES DE MAYO DE 2001.

" LA EMPRESA"                                        "EL PRESTADOR DE SERVICIOS"
CNA MEXICO S DE R L DE C V                          AAA ESTRELLA BLANCA
Patricia Maldonado . REPRESENTANTE                  RODOLFO CISNEROS C.

## CONTRACT TO RENDER SERVICES

Contract to render services entered into by and between "CNA MEXICO S. DE R.L. DE C.V.", with its address located at Eje Sur #35, Paseo de Churubusco, Delegación Iztapalapa, Código Postal 09030, Mexico, D.F., hereinafter referred to as "THE COMPANY", duly represented by ING. PATRICIA MARIA DEL CARMEN MALDONADO GUTIERREZ, in her capacity as Legal Representative, and "AAA ESTRELLA BLANCA", with its business address located at 1405 E. Jefferson, Brownsville, TX 78520 U.S.A., with Federal Taxpayer No. 74-2990640, duly represented by MR. RODOLFO CISNEROS, in his capacity as Owner of the company, hereinafter referred to as the "SERVICE PROVIDER", pursuant to the following recitals and clauses:

### RECITALS

I.    Cable Network states:

A. That it is a business corporation of variable capital duly incorporated in accordance to the Mexican laws as evidenced by its Articles of Incorporations, Charter No. 3032, Public Registry, Volume 229672, granted before the assertion of Atty. Carlos A. Matsui Santana, Notary Public Number 38 of Mexico, D.F.

B. That for the attainment of its purposes, in addition to the programs and approved budgets, it performs other activities through the execution of agreements or contracts with the public, social and private sectors.

C. That on May 29, 2001, "the Company" executed a (contract, accord or agreement) with AAA Estrella Blanca for services in the fields of logistics, import, and export of materials.

D. That for the performance of the (contract, accord or agreement) indicated in the above recital, it requires the rendering of services to carry out the actions subject of this contract, and which consist of:

1.    Warehouses with handling services (loading and unloading) and storage in the city of Brownsville, Texas.

2.    Certificate from country of origin, F.T.A., inspection and labeling of merchandise.

3.    Classification of merchandise and Mexican customs expenses.

4.    Supervision and dealings before Customs in the city of Matamoros, Tamaulipas, at the customs agency, (taxes and/or fiscal duties, as well as expenses shall be paid for by "the Company" before the material can cross into Matamoros, Tamps).



5.    Contracting of transportation or freight lines in the city of Matamoros, Tamaulipas, to be used for the shipment of merchandise. (The expenses resulting from the contracting of the transportation service shall be paid for by "the Company".)

E. That its business address for purposes of this Contract, is the one indicated above.

II    The "Service Provider" states:

A. That it has the technical knowledge and expertise necessary to perform the tasks contained in this contract.

Having stated the foregoing, the parties subject their commitments to the following terms and conditions included in the following:

## CLAUSES

FIRST: The "Service Provider" promises to offer "the Company" its services in order to carry out the activities consisting of logistics, import and export, as set forth in paragraphs "C" and "D" of the recitals by CNA MEXICO S. DE R.L. DE C.V.

SECOND: The "Service Provider" promises to develop the services set forth in the above clause to the complete satisfaction of "the Company", providing all its expertise and capacity, and devoting all the time which is necessary.

THIRD: The parties are satisfied in that the basis for this Contract are the guidelines contained (accords, contracts, or agreements), which can be agreed to through civil contracts.

FOURTH: The "Service Provider" promises to inform "the Company" regarding the status of its tasks, as many times as may be required, as well as to render a general report upon the termination of this contract and not to assign the rights and obligations derived from this contract, without the express consent of "the Company".

FIFTH: This contract shall be effective on May 29, 2001, and shall be valid for a period of two years as of its execution.

SIXTH: The "Service Provider" shall receive as fees, the sum of:

1.    5% (Five percent) of the value of the product, provided said value is not less than $4,100.00 U.S. Dollars (Four Thousand One Hundred U.S. Dollars).

2.    $150.00 U.S. Dollars (One Hundred Fifty U.S. Dollars) when the value of the product is less than $4,100.00 U.S. Dollars (Four Thousand One Hundred U.S. Dollars).

**SEVENTH:** The "Service Provider" agrees that the compensation it receives for the performance of the services subject of this contract, shall be the only ones [it shall receive].

**EIGHTH:** "The Company" promises to pay the fees to "the Professional" through the appropriate administrative agency, prior the delivery of the respective receipts or vouchers, which shall comply with the fiscal requirements as dictated by law regarding said matters.

**NINTH:** The "Service Provider" accepts and agrees that in the event it omits the notice and declaration for fiscal purposes referred to in the above clause, it authorizes "the Company" to retain its payments, until such fiscal omissions have been complied with by it, as the one who caused them, and in accordance to the terms of the appropriate laws.

**TENTH:** After the conclusion of the term of this contract, it cannot be automatically extended by the simple passage of time, and shall terminate without a need of notice to the parties after two years.

**ELEVENTH:** In the event "the Company" needed to contract again the services of the "Service Provider", the execution of a new contract shall be required.

**TWELFTH:** It is expressly agreed that whenever the "Service Provider" hires support personnel in order to perform its duties, while taking care of the task entrusted to it, such personnel shall be its exclusive responsibility, and there shall be no relationship between "the Company" and said personnel. The "Service Provider" shall be responsible for all the obligations regarding the hiring of its support personnel and which "the Company" does not provide.

**THIRTEENTH:** This contract can be terminated at will by any of the contracting parties within a term after having complied with two years of services, prior notice to the other party with three months in advance, in order that during this period any pending jobs can be completed, and that, in any event, "the Company" can have the opportunity to appoint whoever will substitute the "Service Provider".

**FOURTEENTH:** It is expressly agreed that failure to comply with any of the obligations under this contract and others from the current civil code, applicable to the obligations of the parties, shall be grounds for the rescission of this contract, and shall cause the payment of damages and losses which the noncompliance caused the complying party.

**FIFTEENTH:** The "Service Provider" freely assigns to "the Company" the rights (of ownership, author, translator, compiler, executant), that may arise from the rendering of the professional services; in addition, the "Service Provider" agrees to assign free title to (patent rights, trademarks, or exploitation of inventions, drawings, models of industrial nature), which may result by virtue of the rendering of the aforementioned services, in order that if "the Company" deems it appropriate, it shall reserve the right for licenses or patents or to make the appropriate cultural or scientific broadcasting of the work done.

**SIXTEENTH:** For the interpretation and compliance of this contract the parties hereto submit to the jurisdiction of the courts of Mexico, D.F., as well as to the provisions of the current civil code for the state of Mexico, D.F., expressly waiving any venue that may correspond to them by reason of their present or future domiciles.

HAVING READ THE CONTRACT AND THE PARTIES HAVING ACKNOWLEDGED ITS CONTENT AND SCOPE, THEY SIGN IT IN THE CITY OF MEXICO, D.F. ON THE 29TH DAY OF MAY OF THE YEAR 2001.

"THE COMPANY"                                    "THE SERVICE PROVIDER"
CNA MEXICO S. DE R.L. DE C.V.                    AAA ESTRELLA BLANCA
Patricia Maldonado, REPRESENTATIVE               RODOLFO CISNEROS C.

    [flourish]                                        [flourish]

---

_**Declaration of Interpreter/Translator**_

    _I, Sandra R. Cortez, certified by the Administrative Office of the United States Courts for English-Spanish interpreting, do hereby certify that I have translated the foregoing document from Spanish into English. I declare, under penalty of perjury, that to the best of my knowledge and abilities, this is a true and correct translation of the Spanish language text._

        _Brownsville, Texas - October 18, 2001_



             _Sandra R. Cortez_
        **U.S. Court Certified Interpreter**
          **(Certif. No. 98029)**

*Exhibit C*

46     LEYES Y CÓDIGOS DE MÉXICO

ART. 19.—Las controversias judiciales del orden civil deberán resolverse conforme a la letra de la ley o a su interpretación jurídica. A falta de ley se resolverán conforme a los principios generales de derecho.

ART. 20.—Cuando haya conflicto de derechos, a falta de ley expresa que sea aplicable, la controversia se decidirá a favor del que trata de evitarse perjuicios y no a favor del que pretenda obtener lucro. Si el conflicto fuere entre derechos iguales o de la misma especie, se decidirá observando la mayor igualdad posible entre los interesados.

ART. 21.—La ignorancia de las leyes no excusa su cumplimiento; pero los jueces, teniendo en cuenta el notorio atraso intelectual de algunos individuos, su apartamiento de las vías de comunicación o su miserable situación económica, podrán, si está de acuerdo el Ministerio Público, eximirlos de las sanciones en que hubieren incurrido por la falta de cumplimiento de la ley que ignoraban, o de ser posible, concederles un plazo para que la cumplan, siempre que no se trate de leyes que afecten directamente al interés público.

## LIBRO PRIMERO

### De las personas

## TITULO PRIMERO

### De las personas físicas

ART. 22.—La capacidad jurídica de las personas físicas se adquiere por el nacimiento y se pierde por la muerte; pero desde el momento en que un individuo es concebido, entra bajo la protección de la ley y se le tiene por nacido para los efectos declarados en el presente código.

ART. 23.—La minoría de edad, el estado de interdicción y demás incapacidades establecidas por la ley, son restricciones a la capacidad jurídica que no deben menoscabar la dignidad de la persona ni atentar contra la integridad de la familia; pero los incapaces pueden ejercitar sus derechos o contraer obligaciones por medio de sus representantes.

ART. 24.—El mayor de edad tiene la facultad de disponer libremente de su persona y de sus bienes, salvo las limitaciones que establece la ley.

## TITULO SEGUNDO

### De las personas morales

ART. 25.—Son personas morales:

I. La Nación, los Estados y los Municipios;

II. Las demás corporaciones de carácter público reconocidas por la ley;

III. Las sociedades civiles o mercantiles;

IV. Los sindicatos, las asociaciones profesionales y las demás a que se refiere la fracción XVI del artículo 123 de la Constitución federal;

V. Las sociedades cooperativas y mutualistas;

VI. Las asociaciones distintas de las enumeradas que se propongan fines políticos, científicos, artísticos, de recreo o cualquiera otro fin lícito, siempre que no fueren desconocidas por la ley.

VII.—Las personas morales extranjeras de naturaleza privada, en los términos del artículo 2736.

*Exhibit D*

ART. 26.—Las personas morales pueden ejercitar todos los derechos que sean necesarios para realizar el objeto de su institución.

ART. 27.—Las personas morales obran y se obligan por medio de los órganos que las representan, sea por disposición de la ley o conforme a las disposiciones relativas de sus escrituras constitutivas y de sus estatutos.

ART. 28.—Las personas morales se regirán por las leyes correspondientes, por su escritura constitutiva y por sus estatutos.

— ART. 28 bis.— Las personas morales extranjeras de natualeza privada no regidas por otras leyes, solamente podrán establecerse en el territorio de la República, cumpliendo con las disposiciones legales aplicables y previa autorización de la Secretaría de Relaciones Exteriores.

## TITULO TERCERO

### Del domicilio

ART. 29.— El domicilio de las personas físicas es el lugar donde residen habitualmente, y a falta de este, el lugar del centro principal de sus negocios, en ausencia de éstos, el lugar donde simplemente residan y, en su defecto, el lugar donde se encontraren.

Se presume que una persona reside habitualmente en un lugar, cuando permanezca en el por mas de seis meses.

ART. 30.— El domicilio legal de una persona física es el lugar donde la ley le fija su residencia para el ejercicio de sus derechos y el cumplimiento de sus obligaciones, aunque de hecho no esté allí presente.

ART. 31.— Se reputa domicilio legal,

I.— Del menor de edad no emancipado, el de la persona a cuya patria potestad esta sujeto,

II.— Del menor de edad que no este bajo la patria potestad y del mayor incapacitado, el de su tutor,

III.— En el caso de menores o incapaces abandonados, el que resulte conforme a las circunstancias previstas en el artículo 29,

IV.— De los cónyuges, aquél en el cual éstos vivan de consuno, sin perjuicio del derecho de cada cónyuge de fijar su domicilio en la forma prevista en el artículo 29.

V.— De los militares en servicio activo, el lugar en que están destinados,

VI.— De los servidores públicos, el lugar donde desempeñan sus funciones por más de seis meses,

VII.— De los funcionarios diplomáticos, el último que hayan tenido en el territorio del Estado acreditante, salvo con respecto a las obligaciones contraídas localmente.

VIII.— De las personas que residan temporalmente en el país en el desempeño de una comisión o empleo de su gobierno o de un organismo internacional, será el del Estado que los haya designado o el que hubieren tenido antes de dicha designación respectivamente, salvo con respecto a obligaciones contraídas localmente, y

IX.— De los sentenciados a sufrir una pena privativa de la libertad por más de seis meses, la población en que la extingan, por lo que toca a las relaciones jurídicas posteriores a la condena, en cuanto a las relaciones anteriores, los sentenciados conservarán el último domicilio que hayan tenido.—

ART. 32.— Cuando una persona tenga dos o mas domicilios se le considerará domiciliada en el lugar en que simplemente resida, y si viviere en varios, aquel en que se encontrare.

ART. 33.—Las personas morales tienen su domicilio en el lugar donde se halle establecida su administración.

Las que tengan su administración fuera del Distrito Federal, pero que ejecuten actos jurídicos dentro de su circunscripción, se considerarán domiciliadas en el lugar donde los hayan ejecutado, en todo lo que a esos actos se refiera.

Las sucursales que operen en lugares distintos de donde radica la casa matriz, tendrán su domicilio en esos lugares para



## CAPITULO VI

*De las personas morales extranjeras de naturaleza privada.*

ART. 2736.— La existencia, capacidad para ser titular de derechos y obligaciones, funcionamiento, transformación, disolución, líquidación y fusión de las personas morales extranjeras de naturaleza privada se regirán por el derecho de su constitución, entendiéndose por tal, aquél del Estado en que se cumplan los requisitos de forma y fondo requeridos para la creación de dichas personas.

En ningún caso el reconocimiento de la capacidad de una persona moral extranjera excederá a la que le otorgue el derecho conforme al cual se constituyó.

Cuando alguna persona extranjera de naturaleza privada actúe por medio de algún representante, se considerará que tal representante, o quien lo substituya, está autorizado para responder a las reclamaciones y demandas que se intenten en contra de dicha persona con motivo de los actos en cuestión.

ART. 2737.— La autorización a que se refiere el artículo 28 bis no se concederá a menos de que las personas morales extranjeras prueben:

I.   Que están constituidas con arreglo a las leyes de su país y que sus estatutos nada contienen que sea contrario a las leyes mexicanas de orden público;

II.   Que tienen representante domiciliado en el lugar donde van a operar, suficientemente autorizado para responder de las obligaciones que contraigan las mencionadas personas morales.

ART. 2738.— Concedida la autorización por la Secretaría de Relaciones Exteriores, se inscribirán en el registro los estatutos de las personas morales extranjeras de naturaleza privada.

## CAPÍTULO VII

*De la aparcería rural*

ART. 2739.—La aparcería rural comprende la aparcería agrícola y la de ganados.

ART. 2740.—El contrato de aparcería deberá otorgarse por escrito, formándose dos ejemplares, uno para cada contratante.

ART. 2741.—Tiene lugar la aparcería agrícola cuando una persona da a otra un predio rústico para que lo cultive, a fin de repartirse los frutos en la forma que convengan, o a falta de convenio, conforme a las costumbres del lugar, en el concepto de que al aparcero nunca podrá corresponderle por sólo su trabajo menos del cuarenta por ciento de la cosecha.

ART. 2742.—Si durante el término del contrato falleciere el dueño del predio dado en aparcería, o éste fuere enajenado, la aparcería subsistirá.

Si es el aparcero el que muere, el contrato puede darse por terminado, salvo pacto en contrario.

Cuando a la muerte del aparcero ya se hubieren hecho algunos trabajos, tales como el barbecho del terreno, la poda de los árboles o cualquiera otra obra necesaria para el cultivo, si el propietario da por terminado el contrato, tiene obligación de pagar a los herederos del aparcero el importe de esos trabajos, en cuanto se aproveche de ellos.

ART. 2743.—El labrador que tuviere heredades en aparcería no podrá levantar las mieses o cosechar los frutos en que deba tener parte sin dar aviso al propietario o a quien haga sus veces, estando en el lugar o dentro de la municipalidad a que corresponda el predio.

ART. 2744.—Si ni en el lugar ni dentro de la municipalidad se encuentran el propietario o su representante, podrá el aparcero hacer la cosecha, midiendo, contando o pesando los frutos a presencia de dos testigos mayores de toda excepción.

ART. 2745.—Si el aparcero no cumple lo dispuesto en los dos artículos anteriores, tendrá obligación de entregar al propietario la cantidad de frutos que, de acuerdo con el contrato, fijen peritos nombrados uno por cada parte contratante. Los honorarios de los peritos serán cubiertos por el aparcero.

**8**   CÓDIGO DE COMERCIO

*Artículo 5*
*Artículo 5*
*Artículo í*
*Artículo*
*Artículo*
*Artículo*
*Artículo* ᵥₐ. ᵥ
*Artículo 62.* (Se deroga).
*Artículo 63.* (Se deroga).
*Artículo 64.* (Se deroga).
*Artículo 65.* (Se deroga).
*Artículo 66.* (Se deroga).
*Artículo 67.* (Se deroga).
*Artículo 68.* (Se deroga).
*Artículo 69.* (Se deroga).
*Artículo 70.* (Se deroga).
*Artículo 71.* (Se deroga).
*Artículo 72.* (Se deroga).
*Artículo 73.* (Se deroga).
*Artículo 74.* (Se deroga).

# LIBRO SEGUNDO

## Del comercio terrestre

## TÍTULO PRIMERO

## De los actos de comercio y de los contratos mercantiles en general

### CAPÍTULO I

### De los actos de comercio

*Artículo 75.* La Ley reputa actos de comercio:

I. Todas las adquisiciones, enajenaciones y alquileres verificados con propósito de especulación comercial, de mantenimientos, artículos, muebles o mercaderías, sea en estado natural, sea después de trabajados o labrados;

II. Las compras y ventas de bienes inmuebles, cuando se hagan con dicho propósito de especulación comercial;

III. Las compras y ventas de porciones, acciones y obligaciones de las sociedades mercantiles;

IV. Los contratos relativos y obligaciones del Estado u otros títulos de crédito corrientes en el comercio;

V. Las empresas de abastecimientos y suministros;

VI. Las empresas de construcciones, y trabajos públicos y privados;

VII. Las empresas de fábricas y manufacturas;

VIII. Las empresas de transportes de personas o cosas, por tierra o por agua; y las empresas de turismo;

IX. Las librerías, y las empresas editoriales y tipográficas;

X. Las empresas de comisiones, de agencias, de oficinas de negocios comerciales y establecimientos de ventas en pública almoneda;

XI. Las empresas de espectáculos públicos;

XII. Las operaciones de comisión mercantil;

XIII. Las operaciones de mediación de negocios mercantiles;

XIV. Las operaciones de bancos;

XV. Todos los contratos relativos al comercio marítimo y a la navegación interior y exterior;

XVI. Los contratos de seguros de toda especie, siempre que sean hechos por empresas;

XVII. Los depósitos por causa de comercio;

XVIII. Los depósitos en los almacenes generales y todas las operaciones hechas sobre los certificados de depósito y bonos de prenda librados por los mismos;

XIX. Los cheques, letras de cambio o remesas de dinero de una plaza a otra, entre toda clase de personas;

XX. Los vales u otros títulos a la orden o al portador, y las obligaciones de los comerciantes, a no ser que se pruebe que se derivan de una causa extraña al comercio;

XXI. Las obligaciones entre comerciantes y banqueros, si no son de naturaleza esencialmente civil;

XXII. Los contratos y obligaciones de los empleados de los comerciantes en lo que concierne al comercio del negociante que los tiene a su servicio;

XXIII. La enajenación que el propietario o el cultivador hagan de los productos de su finca o de su cultivo;

XXIV. Cualesquiera otros actos de naturaleza análoga a los expresados en este Código.

En caso de duda, la naturaleza comercial del acto será fijada por arbitrio judicial.

*Artículo 76.* No son actos de comercio la compra de artículos o mercaderías que para su uso o consumo, o los de su familia, hagan los comerciantes: ni las reventas hechas por obreros, cuando ellas fueren consecuencia natural de la práctica de su oficio.

# CAPÍTULO II

## *De los contratos mercantiles en general*

*Artículo 77.* Las convenciones ilícitas no producen obligación ni acción, aunque recaigan sobre operaciones de comercio.



# ⁙IEDADES MERCANTILES

**TEXTO VIGENTE**

Nueva Ley publicada en el *Diario Oficial de la Federación* el 4 de agosto de 1934.

Ley General de Sociedades Mercantiles.

El C. Presidente Constitucional Sustituto de los Estados Unidos Mexicanos, se ha servido dirigirme la siguiente Ley:

ABELARDO L. RODRIGUEZ, Presidente Constitucional Sustituto de los Estados Unidos Mexicanos, a sus habitantes, sabed:

Que en uso de las facultades extraordinarias que me confiere el Decreto expedido por el Congreso de la Unión, con fecha 28 de diciembre de 1933, para expedir un nuevo Código de Comercio y las leyes especiales en materia de comercio y de derecho procesal mercantil, he tenido a bien expedir la siguiente

# LEY GENERAL DE SOCIEDADES MERCANTILES

## CAPÍTULO I

### De la constitución y funcionamiento de las sociedades en general

**Artículo 1o.** Esta Ley reconoce las siguientes especies de sociedades mercantiles:

I. Sociedad en nombre colectivo;

II. Sociedad en comandita simple;

III. Sociedad de responsabilidad limitada;

IV. Sociedad anónima;

V. Sociedad en comandita por acciones, y

VI. Sociedad cooperativa.

Cualesquiera de las sociedades a que se refieren las fracciones I a V de este artículo podrán constituirse como sociedad de capital variable, observándose entonces las disposiciones del Capítulo VIII de esta Ley.

**Artículo 2o.** Las sociedades mercantiles inscritas en el Registro Público de Comercio, tienen personalidad jurídica distinta de la de los socios.

Salvo el caso previsto en el artículo siguiente, no podrán ser declaradas nulas las sociedades inscritas en el Registro Público de Comercio.

**570**     LEY GENERAL

Las sociedades no inscritas en el Registro Público de Comercio que se hayan exteriorizado como tales, frente a terceros consten o no en escritura pública, tendrán personalidad jurídica.

Las relaciones internas de las sociedades irregulares se regirán por el contrato social respectivo, y, en su defecto, por las disposiciones generales y por las especiales de esta Ley, según la clase de sociedad de que se trate.

Los que realicen actos jurídicos como representantes o mandatarios de una sociedad irregular, responderán del cumplimiento de los mismos frente a terceros, subsidiaria, solidaria e ilimitadamente, sin perjuicio de la responsabilidad penal, en que hubieren incurrido, cuando los terceros resultaren perjudicados.

Los socios no culpables de la irregularidad, podrán exigir daños y perjuicios a los culpables y a los que actuaren como representantes o mandatarios de la sociedad irregular.

*Artículo 3o.* Las sociedades que tengan un objeto ilícito o ejecuten habitualmente actos ilícitos, serán nulas y se procederá a su inmediata liquidación, a petición que en todo tiempo podrá hacer cualquiera persona, incluso el Ministerio Público, sin perjuicio de la responsabilidad penal a que hubiere lugar.

La liquidación se limitará a la realización del activo social, para pagar las deudas de la sociedad, y el remanente se aplicará al pago de la responsabilidad civil, y en defecto de ésta, a la Beneficencia Pública de la localidad en que la sociedad haya tenido su domicilio.

*Artículo 4o.* Se reputarán mercantiles todas las sociedades que se constituyan en alguna de las formas reconocidas en el artículo 1o. de esta Ley.

*Artículo 5o.* Las sociedades se constituirán ante notario y en la misma forma se harán constar con sus modificaciones. El notario no autorizará la escritura cuando los estatutos o sus modificaciones contravengan lo dispuesto por esta Ley.

*Artículo 6o.* La escritura constitutiva de una sociedad deberá contener:

I. Los nombres, nacionalidad y domicilio de las personas físicas o morales que constituyan la sociedad;

II. El objeto de la sociedad;

III. Su razón social o denominación;

IV. Su duración;

V. El importe del capital social;

VI. La expresión de lo que cada socio aporte en dinero o en otros bienes; el valor atribuido a éstos y el criterio seguido para su valorización.

Cuando el capital sea variable, así se expresará indicándose el mínimo que se fije;

VII. El domicilio de la sociedad;

VIII. La manera conforme a la cual haya de administrarse la sociedad y las facultades de los administradores;

IX. El nombramiento de los administradores y la designación de los que han de llevar la firma social;

X. La manera de hacer la distribución de las utilidades y pérdidas entre los miembros de la sociedad;

XI. El importe del fondo de reserva;

XII. Los casos en que la sociedad haya de disolverse anticipadamente, y

XIII. Las bases para practicar la liquidación de la sociedad y el modo de proceder a la elección de los liquidadores, cuando no hayan sido designados anticipadamente.

*Exhibit E*

Department of the Treasury
Internal Revenue Service

2001

Form 941-V Payment Voucher

Enter the amount of your payment  $ 232.83

▲ Use this voucher when making a payment with your tax return.
▲ ▲ Do not staple this voucher or your payment to your return.
▲ ▲ ▲ Do not send cash.
FOR PRIVACY ACT AND PAPERWORK REDUCTION ACT NOTICE, SEE BACK OF PAYMENT VOUCHER.

YF  74-2990640

RODOLFO CISNEROS
AAA ESTRELLA BLANCA
3547 E.14.TH ST. SUITE A&B
BROWNSVILLE TX 78520-5755

INTERNAL REVENUE SERVICE
P.O.BOX 7922
SAN FRANCISCO  CA 94120-7922

74299064O YF CISN O1 2 200106 610

16-1430—ASSUMED NAME CERTIFICATE—Class 6 16/81

VOL **3718** PAGE **165**

THE STATE OF TEXAS

COUNTY OF _____CAMERON_____ } 5048    KNOW ALL MEN BY THESE PRESENTS:

**OFFICIAL RECORDS**

THAT, I RODOLFO CISNEROS _____, the undersigned, for the purpose of complying with Chapter 36 of the Business and Commerce Code of the State of Texas, do hereby certify to the following facts:

1. _____ is the assumed name under which the business or professional services is or is to be conducted or rendered.

2. Registrant: SOLEPROPRIETOR

3. Names and Addresses:

| Name | Address |
|---|---|
| RODOLFO CISNEROS | P. O. BOX 706 |
| OWNER | BROWNSVILLE, tx. 78520 |
| Title | Address |
| Name | Address |
| Title | Address |
| Name | Address |
| Title | Address |
| Name | Address |
| Title | Address |

Said Company / Corporation was duly associated / incorporated under the laws of    TEXAS

_____ and its registered or similar office address there is    1041 E. WASHINGTON A-12  BROWNSVILLE, TX. 78520

County or counties within the State of Texas where the business or professional services are being or are to be conducted or rendered under said assumed name    CAMERON

4. The business or professional service is a:    DELIVERY SERVICE IN TO MEXICO.
The corporation is a:

5. The period, not to exceed ten (10) years, during which the assumed name will be used is from the    13TH day of    FEBRUARY    19 96 until the    13TH day of    FEBRUARY    2006

IN TESTIMONY WHEREOF, I    have hereunto set    OUR    hand, this the    13TH    day of    FEBRUARY    19 96

[signature]

VOL **3718** PAGE **166**

(Acknowledgment)

THE STATE OF TEXAS

COUNTY OF **CAMERON** }

Before me, the undersigned authority, on this day personally appeared _____ **RODOLFO CISNEROS** _____

known to me _____ whose name _____ subscribed to the foregoing instrument, and acknowledged to me that _____ executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office on this the **13TH** day of **FEBRUARY** A.D. 19 **96**

_____

Notary Public, _____ County, Texas.

(Acknowledgment Under Oath)

THE STATE OF TEXAS

COUNTY OF _____ }

BEFORE ME, the undersigned authority, on this day personally appeared _____ who having been by me first duly sworn upon oath, deposed and said: "I have been duly authorized in writing by my principal to execute and acknowledge this legal instrument."

SUBSCRIBED AND SWORN TO BEFORE ME by _____

this the _____ day of _____, 19 _____

_____

Notary Public, _____ County, Texas.

THE STATE OF TEXAS

COUNTY OF _____ }

Before me, the undersigned authority, on this day personally appeared _____

known to me to be the person _____ whose name _____ subscribed to the foregoing instrument, and acknowledged to me that _____ he _____ executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office on this the _____ day of _____, A.D. 19 _____

_____

Notary Public, _____ County, Texas.

No. **5048**

Certificate of
ASSUMED NAME

ASSUMED
NAME OF BUSINESS

FILED FOR RECORD
AT
Feb 3   10 17 AM '96
JOE G. RIVERA
CLERK COUNTY COURT
CAMERON COUNTY TEXAS
BY _____ DEPUTY

Clerk

County Court.

Deputy.

County Court

By

FEE $3.00 Plus 50¢ for each name to be indexed.

(Corporate/Partnership Acknowledgment)

THE STATE OF TEXAS

COUNTY OF _____

Before me, the undersigned authority, on this day personally appeared _____ of _____ a (partnership) (corporation) known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed, in the capacity therein stated and as the act and deed of said (partnership) (corporation.)

Given under my hand and seal of office on this the _____, 19

_____

Notary Public, _____ County, Texas.

*Exhibit F*

# AFFIDAVIT

STATE OF TEXAS                 §
                                         §

COUNTY OF CAMERON            §

BEFORE ME, the undersigned authority, personally appeared RODOLFO CISNEROS, who, by me duly sworn, deposed as follows:

"My name is RODOLFO CISNEROS. I am of sound mind and capable of making this affidavit. I am personally acquainted with the facts herein stated, which are true.

"I am here at the office of Cisneros & Mattingly, P.C., and voluntarily, willingly and intelligently give the following statement.

"I am the owner of AAA Estrella Blanca. AAA Estrella Blanca is not incorporated under the laws of México. I have no power of attorney from AAA Estrella Blanca to be able to legally represent the business and contract on it's behalf as required under the laws of México. AAA Estrella Blanca is not incorporated under the laws of Texas either.

"I am Rodolfo Cisneros, an individual D/B/A AAA Estrella Blanca. AAA Estrella Blanca is simply an assumed name."

Further Affiant sayeth not.

SIGNED this the ___25___ day of ___March___ , 2002.



_____
RODOLFO CISNEROS, Affiant

SIGNED under oath before me by the said Affiant on March 25 , 2002.

<br>

LEONOR CDE GARCIA
MY COMMISSION EXPIRES
January 23, 2006

_____
Notary Public, in and for the State of Texas

# AFFIDAVIT

STATE OF TEXAS                    §
                                  §
COUNTY OF CAMERON                 §

BEFORE ME, the undersigned authority, personally appeared IGNACIO MARTINEZ, who, by me duly sworn, deposed as follows:

"My name is IGNACIO MARTINEZ.  I am of sound mind and capable of making this affidavit.  I am personally acquainted with the facts herein stated, which are true.

"I am here at the office of Cisneros & Mattingly, P.C., and voluntarily, willingly and intelligently give the following statement.

"I am an attorney licensed in México.  I went to law school at the Instituto Tecnologico y de Estudios Superiores de Monterrey, N.L. where I graduated in 1998.  In 2000, I went to Madrid, Spain to do a Masters in European Union Law.

"I have four (4) years experience in incorporating Mexican companies with foreign investments and I have delt with more than thirty companies.  I know of the numerous legal requirements to properly incorporate a business in México.  I am also familiar with the requirements necessary for either a foreign or American company to do business in México.  I am also familiar with Mexican law regarding contract formation.  I am familiar with the "Codigo Civil Para el Distrito Federal," the "Código de Comercio", and "Ley General de Sociedades Mercantiles".  I have also spoken with Rodolfo Cisneros about the legal status of AAA Estrella Blanca in México.

"From my discussions with Mr. R. Cisneros, it is evident that AAA Estrella Blanca does not exist in México.  That is because it is not incorporated, nor is it registered with any Mexican authorities.  AAA Estrella Blanca is not incorporated under the laws of The State of Texas, as well.

"I have reviewed the contract between CNA Mexico S. de R.L. de C.V. and AAA Estrella Blanca and have to conclude, that based on the information provided to me and based on the "Código Civil" and the "Código de Comercio" and "Ley General de Sociedades Mercantiles", AAA Estrella Blanca cannot contract in México and neither can Rodolfo Cisneros contract on its

behalf.   AAA Estrella Blanca is nothing in México and it, simply, does not exist.  Therefore, Rodolfo Cisneros cannot contract on behalf of a company that does not exist under the Mexican Law.

"Both CNA de México S. de R.L. de C.V. and AAA Estrella Blanca are without a contract, at least under valid Mexican Law."

Further Affiant sayeth not.

SIGNED this the __22__ day of __March_____, 2002.

_____

IGNACIO MARTINEZ, Affiant

SIGNED under oath before me by the said Affiant on __March 22__ , 2002.

LEONOR CDE GARCIA
MY COMMISSION EXPIRES
January 23, 2006

_____

Notary Public, in and for the State of Texas

*Exhibit H*

plazo de ocho días hábiles a partir del siguiente a la fecha de la junta, para exigir modificaciones, si creyeren perjudicados sus derechos;

IV. Si los socios manifestaren expresamente su conformidad o si durante el plazo que se acaba de indicar, no formularen observaciones, se les tendrán por conformes con el proyecto, y el liquidador hará la respectiva adjudicación, otorgándose, en su caso, los documentos que procedan;

V. Si, durante el plazo a que se refiere la fracción III, los socios formularen observaciones al proyecto de división, el liquidador convocará a una nueva junta, en el plazo de ocho días, para que, de mutuo acuerdo se hagan al proyecto las modificaciones a que haya lugar; y si no fuere posible obtener el acuerdo, el liquidador adjudicará el lote o lotes respecto de los cuales hubiere inconformidad, en común a los respectivos socios, y la situación jurídica resultante entre los adjudicatarios se regirá por las reglas de la copropiedad;

VI. Si la liquidación social se hiciere a virtud de la muerte de uno de los socios, la división o venta de los inmuebles se hará conforme a las disposiciones de esta Ley, aunque entre los herederos haya menores de edad.

*Artículo 247.* En la liquidación de las sociedades anónimas y en comandita por acciones, los liquidadores procederán a la distribución del remanente entre los socios con sujeción a las siguientes reglas:

I. En el balance final se indicará la parte que a cada socio corresponda en el haber social;

II. Dicho balance se publicará por tres veces, de diez en diez días, en el Periódico Oficial de la localidad en que tenga su domicilio la sociedad.

El mismo balance quedará, por igual término, así como los papeles y libros de la sociedad, a disposición de los accionistas, quienes gozarán de un plazo de quince días a partir de la última publicación, para presentar sus reclamaciones a los liquidadores.

III. Transcurrido dicho plazo, los liquidadores convocarán a una Asamblea General de Accionistas para que apruebe en definitiva el balance. Esta Asamblea será presidida por uno de los liquidadores.

*Artículo 248.* Aprobado el balance general, los liquidadores procederán a hacer a los accionistas los pagos que correspondan, contra la entrega de los títulos de las acciones.

*Artículo 249.* Las sumas que pertenezcan a los accionistas y que no fueren cobradas en el transcurso de dos meses, contados desde la aprobación del balance final, se depositarán en una institución de crédito con la indicación del accionista. Dichas sumas se pagarán por la institución de crédito en que se hubiese constituido el depósito.

# CAPÍTULO XII

## *De las sociedades extranjeras*

*Artículo 250.* Las sociedades extranjeras legalmente constituidas tienen personalidad jurídica en la República.

*Artículo 251.* Las sociedades extranjeras sólo podrán ejercer el comercio desde su inscripción en el Registro.

**604**    LEY GENERAL DE SOCIEDADES MERCANTILES

La inscripción sólo se efectuará mediante autorización de la Secretaría de Economía Nacional, que será otorgada cuando se cumplan los siguientes requisitos:

I. Comprobar que se han constituido de acuerdo con las leyes del Estado del que sean nacionales, para lo cual se exhibirá copia auténtica del contrato social y demás documentos relativos a su constitución y un certificado de estar constituidas y autorizadas conforme a las leyes, expedido por el representante diplomático o consular que en dicho Estado tenga la República.

II. Que el contrato social y demás documentos constitutivos no sean contrarios a los preceptos de orden público establecidos por las leyes mexicanas.

III. Que se establezcan en la República o tengan en ella alguna agencia o sucursal.

Las sociedades extranjeras estarán obligadas a publicar anualmente un balance general de la negociación visado por un Contador Público titulado.

# CAPÍTULO XIII

# De la asociación en participación

**Artículo 252.** La asociación en participación es un contrato por el cual una persona concede a otras que le aportan bienes o servicios, una participación en las utilidades y en las pérdidas de una negociación mercantil o de una o varias operaciones de comercio.

**Artículo 253.** La asociación en participación no tiene personalidad jurídica ni razón social o denominación.

**Artículo 254.** El contrato de asociación en participación debe constar por escrito y no estará sujeto a registro.

**Artículo 255.** En los contratos de asociación en participación se fijarán los términos, proporciones de interés y demás condiciones en que deban realizarse.

**Artículo 256.** El asociante obra en nombre propio y no habrá relación jurídica entre los terceros y los asociados.

**Artículo 257.** Respecto a terceros, los bienes aportados pertenecen en propiedad al asociante, a no ser que por la naturaleza de la aportación fuere necesaria alguna otra formalidad, o que se estipule lo contrario y se inscriba la cláusula relativa en el Registro Público de Comercio del lugar donde el asociante ejerce el Comercio. Aun cuando la estipulación no haya sido registrada, surtirá sus efectos si se prueba que el tercero tenía o debía tener conocimiento de ella.

**Artículo 258.** Salvo pacto en contrario, para la distribución de las utilidades y de las pérdidas se observará lo dispuesto en el artículo 16. Las pérdidas que correspondan a los asociados no podrán ser superiores al valor de su aportación.

**Artículo 259.** Las asociaciones en participación funcionan, se disuelven y liquidan, a falta de estipulaciones especiales, por las reglas establecidas para las sociedades en nombre colectivo, en cuanto no pugnen con las disposiciones de este capítulo.

*Exhibit I*

Octava Epoca
Instancia: Tribunales Colegiados de Circuito
Fuente: Semanario Judicial de la Federación
Tomo: XII-Noviembre
Página: 299

No. de Registro: 214313

APODERADO DE PERSONA MORAL, SOCIEDAD MERCANTIL. SU DESIGNACION.
Las asociaciones humanas pueden ser consideradas como personas, pero no en forma idéntica a una persona física, sino como un ente jurídico especial derivado de una ficción legal, sujeto de derechos y obligaciones atento lo dispuesto por los artículos 25, fracción III, 26, 27 y 28 del Código Civil para el Distrito Federal, los cuales establecen que las sociedades mercantiles se obligan, obran y se rigen por medio de los órganos que las representan tanto por disposición legal, o bien por las disposiciones relativas de sus escrituras constitutivas también denominadas estatutos. Por tanto, la voluntad de una persona moral como lo son las sociedades mercantiles se expresa al través de una asamblea general ordinaria o extraordinaria de accionistas y sus determinaciones las cumplen los órganos internos facultados para tal fin, o bien, las personas físicas que se designen en términos de los artículos 10 y 178 de la Ley General de Sociedades Mercantiles, y tal voluntad es formalmente válida mediante su protocolización ante la fe de Notario Público con base en lo establecido por el artículo 194 del invocado ordenamiento legal; en consecuencia, es evidente que la persona moral o sociedad mercantil, para el efecto de nombrar apoderado, lo puede hacer al través de su escritura constitutiva, en sus estatutos o por la decisión de los accionistas en las asambleas ordinarias o extraordinarias y por ende, las actas relativas son los documentos que contienen y comprueban la voluntad de las sociedades para designar el o los apoderados que deseen, actos de asamblea que al protocolizarse en forma imbíbita, también se da fe de la existencia de la indicada manifestación de voluntad contenida en los libros y actas de la sociedad, por lo cual resulta innecesaria su ratificación ante el propio Notario Público.

SEGUNDO TRIBUNAL COLEGIADO EN MATERIA CIVIL DEL PRIMER CIRCUITO.

Amparo en revisión 706/92. Bicicletas Windsor, S.A. de C.V. 29 de mayo de 19920. Unanimidad de votos. Ponente: José Joaquín Herrera Zamora. Secretario: Raúl Eugenio Nava Alcázar.

Case 3:00-cv-00182 Document 11 Filed in TXSD on 06/25/2002 Page 46 of 49

Novena Epoca                                                                No. de Registro:    201270
Instancia:    Tribunales Colegiados de Circuito
Fuente:       Semanario Judicial de la Federación y su Gaceta
Tomo:         IV, Octubre de 1996
Tesis :       XXI.1o.40 C
Página:       616

SOCIEDADES MERCANTILES, REQUISITOS DE LOS PODERES OTORGADOS POR LAS.
Para que el poder otorgado por una sociedad mercantil produzca efectos legales, debe contener la inscripción de las cláusulas constitutivas de la sociedad mandante, relativas al objeto, duración, administración y a las facultades del consejo; el acta relativa a la elección de los miembros de éste, y en la que se haya dictado el nombramiento del apoderado y persona o personas del consejo a quienes se delegue facultad para otorgar mandatos; de donde resulta que, primero, se necesita que exista la persona moral, después, que ésta, constituida debidamente por medio de su consejo de administración, otorgue representación a alguna persona, para intervenir en nombre suyo, en toda clase de asuntos administrativos y judiciales, y si de autos consta que las pruebas rendidas en un artículo sobre excepción dilatoria de falta de personalidad, no acreditaron la existencia legal de una sociedad, debe concluirse que el poder objetado, no tiene eficacia jurídica.

PRIMER TRIBUNAL COLEGIADO DEL VIGESIMO PRIMER CIRCUITO.

Amparo en revisión 119/96. Promotora de Acapulco, S.A. de C.V. 2 de mayo de 1996. Unanimidad de votos. Ponente: Joaquín Dzib Núñez. Secretario: José Luis Vázquez Camacho.

Quinta Epoca                                                    No. de Registro:     360687
Instancia:    Tercera Sala
Fuente:       Semanario Judicial de la Federación
Tomo:         XLII
Página:       3067

**SOCIEDADES MERCANTILES, MODO DE ACREDITAR LA PERSONALIDAD DE SUS MANDATARIOS.**

De acuerdo con el espíritu de la ley y la jurisprudencia, las sociedades no pueden accionar ante los tribunales, reclamando la protección federal, si no prueban su legal existencia; con el propósito de evitar que los fallos protectores resulten dados en favor de una entidad legalmente inexistente y con el propósito también, de no permitir a dichas entidades que ocupen la atención de los tribunales, sin justificar su existencia, o desentendiéndose de las disposiciones de la ley del país que rigen la materia. La jurisprudencia se ha pronunciado en el sentido de reconocer que hay materia para el juicio constitucional cuando, a pesar de no haber demostrado su personalidad una empresa, que ocurre por medio de mandatario ante un juez de distrito, logra comprobar aquélla antes de que la Corte resuelva en revisión el amparo; y la misma jurisprudencia, de acuerdo con el sentir natural y con la legítima y racional interpretación de la ley, reconoce que no es indispensable la inserción en la escritura de poder de todas las cláusulas de la constitución de la sociedad, para acreditar su personalidad, bastando con la certificación notarial, y con las inserción de las cláusulas fundamentales que demuestren, además de la constitución de la sociedad, en el momento de su otorgamiento la vigencia del pacto social, en el instante de que la misma ocurre en los tribunales; lo que puede conocerse teniendo en cuenta el período de ejercicio o las prórrogas que se hubiesen establecido; por lo que si es un testimonio de mandato, exhibido por el representante de una sociedad, aparece la certificación notarial, de haberse tenido a la vista la escritura constitutiva de la misma, debidamente registrada, así como la inserción de las cláusulas fundamentales que basten para adquirir el convencimiento de la existencia de dicha sociedad, y que funcionaba legalmente al tiempo de otorgarse el poder, ello es suficiente para que el juez de distrito, obrando de acuerdo con la ley, reconozca personalidad al mandatario, tanto más cuanto si las constancias del expediente demuestran la constitución y legal existencia de la compañía, pues resultaría antijurídico y de un formulismo inaceptable pretender que el mandatario no representa a su mandante en forma legal, tan sólo porque en el poder exhibido ante el juez de distrito, no se inserta toda la escritura constitutiva, como único medio de comprobar la existencia legal de la sociedad; y aun cuando la jurisprudencia establecida, exprese que en los poderes debe insertarse lo conducente a las constancias que acrediten la legal existencia de la sociedad, cuando no se presenta la escritura constitutiva, es indudable que no alude a todas las cláusulas de ésta, que contengan los requisitos exigidos por el artículo 95 del Código de comercio, para la validez del pacto social atento el espíritu y sentido lógico de la frase "lo conducente", y el espíritu del legislador, que no quiso indudablemente, referirse a todas las cláusulas de la escritura, sino a las conducentes a demostrar la existencia de la persona moral, o sean, las referentes al nombre y número de los otorgantes denominación, domicilio y firma de la sociedad, objeto y duración de la compañía; y el hecho de que se omita en la transcripción del poder, lo relativo al fondo de reserva, a la participación de los fundadores y las bases para practicar la liquidación, no obliga a establecer como no probada la existencia de una sociedad tanto más, cuanto que tales omisiones de existir en la escritura constitutiva, solo dan derecho a los socios para pedir la nulidad del pacto social que existe para ellos y con más razón para los terceros, mientras la misma no se declare oficialmente.

TOMO XLII, Pág. 3067.- Amparo en Revisión.- 5553/32 Sec. 3a.- The Naica Mines of Mexico, S.A.- 21 de noviembre de 1934.- Mayoría de cuatro votos.

Case 1:01-cv-00182 Document 1 Filed in TXSD on 12/26/2002 Page 48 of 49

Quinta Epoca

No. de Registro:    360222

Instancia:     Tercera Sala
Fuente:     Semanario Judicial de la Federación
Tomo:      XLIII
Página:     1312

PERSONAS MORALES, EXISTENCIA DE LAS, PARA LOS EFECTOS DE LA VALIDEZ DE UN CONTRATO.
La comprobación de la existencia de una persona moral, que interviene en un contrato, no es parte de la forma o de las
solemnidades externas de tal contrato, ni del instrumento público en que aquél se consignó, sino que atañe a los requisitos
esenciales del contrato mismo; por lo que si tal comprobación no puede obtenerse de los datos contenidos en dicho instrumento
público, no puede aceptarse la existencia del contrato, puesto que no puede saberse si quien intervino, es efectivamente un sujeto
de derechos.

Amparo civil en revisión 5522/33. "L. G. Molina Co. Inc." 19 de febrero de 1935. Unanimidad de cinco votos. La publicación no
menciona el nombre del ponente.

# SUPREMA CORTE DE JUSTICIA DE LA NACION

Octava Epoca

No. de Registro:   230305

Instancia:   Tribunales Colegiados de Circuito
Fuente:   Semanario Judicial de la Federación
Tomo:   II Segunda Parte-2
Página:   388

**PERSONALIDAD. PARA ACREDITAR LA QUE OSTENTA UN INDIVIDUO RESPECTO DE UNA SOCIEDAD, ES NECESARIO COMPROBAR LA EXISTENCIA DE ESTA.**
Si en el poder conferido a nombre de una sociedad, no se transcriben las cláusulas que demuestren su existencia, no es suficiente para comprobar la personalidad con que se ostenta el representante, pues no basta que éste exhiba el documento que tienda a acreditar la representación otorgada; sino que, además, es indispensable probar que la persona moral mandante goza de entidad jurídica.

SEGUNDO TRIBUNAL COLEGIADO EN MATERIA CIVIL DEL TERCER CIRCUITO.

Amparo en revisión 396/87. Anver de Occidente, S.A. de C.V. 11 de agosto de 1988. Unanimidad de votos. Ponente: Gilda Rincón Orta. Secretaria: Silvia Viniegra Vallejo.